## 53040. HAYNIE v. THE STATE.

WEBB, Judge.

Haynie was indicted on April 15, 1976, for the offense of aggravated assault by shooting and pled not guilty. With leave of court he filed a motion to compel discovery, and before trial an in camera inspection of the file then in the possession of the district attorney was held, and the motion overruled. The case went to trial on April 27, but a mistrial was declared and the case was set to be tried again on May 7. Prior to trial Haynie's attorney filed a motion to produce demanding production of a pistol which he had in his possession at the time of the alleged assault, the bullet which struck the victim, and medical reports and x-rays of the victim. This motion was overruled and the case proceeded to trial for the second time.

The evidence was that the victim, David Boynton, was one of about 15 people congregated at a bar in Richmond County sometime after midnight on March 20, 1976. Haynie's sister, Joyce Gregory, and another woman began slapping each other and Boynton moved to separate them when he felt a "surge" and realized he had been shot. He did not see who shot him and saw Haynie for the first time in court. The bullet was still in his person, lodged in his back an inch from his spine, on the date of trial. Eyewitnesses testified that they saw Haynie remove a small, silver-plated pistol from his sister's purse, which was lying on the bar, and shoot it. He admitted removing

the pistol but denied that a shot was fired from it. After Boynton was shot, Haynie tried to take him to the hospital, but an ambulance was called and Haynie left with his sister and two other women. Their car would not start so they "messed around a little bit before they could get it started," and left. The police arrived shortly thereafter.

J. B. Dykes, an investigator for the Richmond County Sheriff's Department, testified that when he arrived he found Boynton lying on the floor. His outer shirt had a hole in it and there was a powder burn around it. The state attempted to introduce certain cotton patches with bullet holes in them, some of them with powder burns, to establish the distance at which the victim was shot. The court sua sponte ruled out this evidence and the jury was instructed to disregard it. Dykes further testified that he saw no gun that night but found three pistols in the evidence locker of the sheriff's office on April 26, one of which appeared to have been turned in on April 22 and was tagged with Haynie's name. He stated that it was not unusual for one to be turned over to a uniformed officer and not get to the investigator for several weeks. The court told the jury "to disregard the evidence with reference to what allegedly was found on this particular weapon" as hearsay, and subsequently checked cross examination on the subject on the ground that the pistol had been previously ruled out.

Joyce Gregory testified that she was in the bar on the night in question and got in a fight with a girl; that Boynton grabbed her by the neck and pushed her away and pushed Haynie up against the bar; and that she heard hollering about someone being shot and stabbed and left. When she got home she opened her pistol and found that it had not been fired. The state had three pistols in court and Gregory identified one as hers, "a .38 — with long bullets." She turned this pistol over to two Richmond County deputies on the following Monday after the date in question, a Friday. Haynie swore that he saw his sister in a fight with another woman, that Boynton grabbed her and pushed him up against the bar. He pulled his sister's purse toward him, took out the gun, a Mountie .38, when he heard a shot, but he never had a chance to point the gun

and it never did fire.

On rebuttal, Officer Dykes testified about the hole and powder burn tests previously ruled out of evidence and stated that based thereon, in his opinion, the hole in Boynton's shirt was made by a gun fired from between zero and six inches distance. Haynie's objection to this testimony as being irrelevant and not in rebuttal to anything that had been presented was overruled. He also moved to strike this testimony because it was based on the tests Dykes had run, but there had been no showing of similarity between the bullet and powder that made the hole and powder burn on Boynton's shirt and that which was used in the cotton patch tests. The motion to strike was denied. The jury returned a verdict of guilty, an out-of-time appeal was granted and the case is now before this court for review.

We have reviewed the enumerations of error and conclude that all, except the final one which assigns error to the dismissal of the motion to produce evidence, are without merit. This motion was filed on May 7, 1976, three days prior to the trial and conviction here appealed. In it Haynie asserted that subsequent to the assault for which he was indicted, he turned over to the Richmond County Sheriff's Department the gun which he had in his possession that night; that at the previous trial which ended in a mistrial, the state's attorney and a state's witness who was a member of the Richmond County Sheriff's Department stated in their place and under oath, in response to a motion to produce this gun, that they were not in possession of it and that it had not been turned over to them; that after the mistrial Haynie's counsel learned that the gun had in fact been in the possession of the sheriff's department and available to the state's attorney both at the time of the motion to produce and during the course of the trial; and that it is now in their possession and available to the state's attorney.

The motion further alleged that at the first trial Haynie's counsel learned that the bullet which struck the victim, David Boynton, is still within his person, that if the bullet is removed ballistic tests will verify that it was not fired by the gun Haynie had that night; that Haynie is willing and able to bear the expense of removing the

bullet and for the ballistic tests; and that both the gun and the bullet are exculpatory evidence which will affirmatively show that Haynie did not assault Boynton, and are necessary and material to his defense. It prayed that the bullet be removed from the victim, that the court order ballistics tests on it, and offered to bear all expenses. The motion was overruled at the commencement of trial.

During the second trial Haynie's sole defense was that he did not fire the bullet which struck the victim; the only way this could be proved was by a ballistics test of the bullet and the gun which fired it. The Supreme Court recently noted that "The constitutional requirement that a criminal defendant be afforded a fair trial and an adequate opportunity to prepare his defense sometimes poses problems in Georgia because of the absence of any meaningful procedure for pre-trial discovery in criminal cases." *Patterson v. State,* 238 Ga. 204, 205 (232 SE2d 233) (1977). However, the United States Supreme Court held fourteen years ago that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment. Brady v. Maryland, 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1963). See also Williams v. Dutton, 400 F2d 797 (CA 5, 1968); United States v. Eley, 335 FSupp. 353 (ND Ga., 1972). Thus this court recently decided that "The state has a duty to disclose to the defendant evidence that is either exculpatory or material, noncumulative and favorable to his defense. [Cits.] This duty, being derived from due process requirements, is an affirmative one, and applies even absent a request. [Cits.]" *Clark v. State,* 138 Ga. App. 266, 272 (226 SE2d 89) (1976).

Furthermore, the Georgia Supreme Court has expressly declared that Code Ann. § 38-801 (g), providing for notices to produce writings and tangible objects in lieu of a subpoena (Code Ann. § 38-801 (b)), is applicable in criminal cases. *Brown v. State,* 238 Ga. 98 (231 SE2d 65) (1976). In a comprehensive opinion reviewing the legislative history of the statutory provisions for the issuance of subpoenaes and sanctions for noncompliance (Code Ann. §§ 38-801, 38-802; Ga. L. 1966, pp. 502, 505), that court rejected the state's argument that these

provisions were not available to the defendant because of cited decisions holding that there was no statute or rule of procedure in force in Georgia governing pre-trial discovery in criminal cases. Brown had filed a motion for disclosure pursuant to Brady v. Maryland, and, as did Haynie, a motion to produce based on Code Ann. § 38-801 (g) which was heard at the commencement of the trial. The court held that it could not be said that the motion to produce was a pre-trial discovery motion, and that it was not limited to exculpatory material nor does it require a showing of prejudice as does a Brady motion. It concluded that the state had failed to demonstrate any constitutional right "which would be violated by affording an accused the right to use a notice to produce so as to require the production at trial of documentary evidence for use by the accused." 238 Ga. p. 100. It did not decide "which books, writings, documents or tangible objects are or are not required to be produced by the state pursuant to a notice to produce." 238 Ga. p. 100.

Clearly the *Brown* case is controlling here as to production of the pistol, which was in the possession, custody and control of the state. The state contends, however, that *Brown* is not "authority for allowing a defendant to force the victim of an aggravated assault to submit (possibly against his will) to surgery for removal of a bullet lodged in the vicinity of his spine on the bare allegation that said evidence is necessary and material to his defense." While this unquestionably presents a difficult issue, we do not agree.

A criminal defendant has a constitutional guarantee of compulsory process to obtain the *testimony* of witnesses. Art. I, Sec. I, Par. V, Const. of 1945 (Code Ann. § 2-105); see *Murphy v. State,* 132 Ga. App. 654 (209 SE2d 101) (1974). We think this absolute right should reasonably be extended one step further, in accord with the principles enunciated in *Brown v. State,* supra, to allow an accused to utilize Code Ann. § 38-801 (g) to obtain tangible evidence. In reaching this conclusion we are not unmindful of the fact that the state may by means of a search warrant compel the removal of a bullet from the body of an accused, where no danger to his "life or limb" is involved, even though the evidence is intended only for "possible use" by

the prosecution. *Creamer v. State,* 229 Ga. 511 (192 SE2d 350) (1972). We fail to see why the state should be able to acquire such evidence against asserted violations of the constitutional protection of the Fourth and Fifth Amendments if a criminal defendant is denied the same privilege.

In this regard we reject the argument that since the motion to produce was addressed to the state, whereas the bullet is lodged in the victim, the state is without the requisite possession, custody or control to produce it. Any person may be directed to produce tangible things by subpoena under Code Ann. § 38-801 (b), and Code Ann. § 38-801 (g) expressly provides that a notice to produce may be used in lieu of such subpoena. However, subsection (g) recites that where a *party* desires to compel production of tangible things in the possession, control or custody of another *party,* "the party desiring such production may serve a notice to produce upon *counsel* for such other party." (Emphasis supplied.) Obviously this language refers to parties in civil actions, but since *Brown* has construed the section to apply to criminal prosecutions as well we must analogize that the victim, as prosecutor,[1] is a "party" to the case with the state acting as his "counsel."

In *Patterson v. State,* 238 Ga. 204, 206, supra, the Supreme Court further extended pre-trial criminal discovery procedures by recognizing the right of a defendant charged with possession or sale of a prohibited substance to have an expert of his own choosing analyze it

---

[1] In defining "prosecutor" for purposes of juror disqualification under Code Ann. § 59-804 (4) the Supreme Court has adopted the general rule that " '[a] prosecutor is one who instigates a prosecution by making an affidavit charging a named person with the commission of a penal offense, on which a warrant is issued or an indictment or accusation is based.' [Cits.]" *Spence v. State,* 238 Ga. 399, 400 (1977). This is also true even though the aggrieved person is not named as prosecutor and there is no evidence to show that he acted as such, where he is a witness for the prosecution. *Perrett v. State,* 16 Ga. App. 587 (1) (85 SE 820)(1915).

independently, holding that "Where the defendant's conviction or acquittal is dependent upon the identification of the substance as contraband, due process of law requires that analysis of the substance not be left completely within the province of the state." We think this premise is equally relevant to the instant situation where the defense is based solely upon the identification of the pistol which fired the bullet lodged in the victim's body, and where the defendant has requested ballistics tests.

However, as in *Patterson* and *Brown,* supra, the defendant does not have an unqualified right of access to such evidence. First there must be a timely motion. Then a pre-trial hearing must be held to determine (as was done in *Creamer v. State,* 229 Ga. 511, supra), whether removal of the bullet would be dangerous to the victim.[2] The court should also impose appropriate safeguards to insure that the evidence is unchanged and preserved for evidentiary use at trial. Thus here, as in *Brown,* the sole error which occurred may be cured by a hearing in the trial court. "If the trial judge determines that production should have been required and that the materials thus produced justify a retrial, a new trial must be ordered." 238 Ga. p. 101. Leave is granted to appeal within 30 days the trial court's order entered as a result of such hearing.

*Judgment reversed with direction. Bell, C. J., Quillian, P. J., Smith and Shulman, JJ., concur. Deen, P. J., Marshall and McMurray, JJ., dissent.*

ARGUED NOVEMBER 2, 1976 — DECIDED MARCH 28, 1977 —

---

[2] We recognize, but do not attempt to rule upon the issue since it is not now before us, that even after a removal has been deemed safe the victim might arbitrarily refuse to undergo surgery. If the evidence were determined by pre-trial hearing to be material for a determination of guilt or innocence, however, it would seem that the prosecution must be dismissed if the aggrieved witness refuses to co-operate.

*Glover & Sibley, Sam B. Sibley, Jr.,* for appellant.
*Richard E. Allen, District Attorney, Stephen E. Curry, Assistant District Attorney,* for appellee.

DEEN, Presiding Judge, dissenting.

I consider this case to be one of the most important to come before this court in recent years, since it affects the person and constitutional rights of every citizen of this state. The majority opinion holds that where a person not concerned with the crime for which the defendant is on trial other than as the victim of gunfire in a bar room brawl has suffered a gunshot wound, he is subject to be seized by the state and his body again cut open to obtain the bullet placed there by the assailant.

My objections are on two grounds, one procedural and one substantive.

(1) This bullet lodged in the victim's back approximately one inch from his spinal cord. The only attempt to obtain it by legal process was by a *motion to produce* by the defendant *served on the state.* No notice has been given to the citizen in whose body this bullet is located. He is unrepresented in the hearing which the majority opinion orders the court to hold. He is not a party to the case. The majority opinion correctly cites the applicability to criminal cases of Code § 38-801 (g) dealing with notices to produce, but such notice may compel production only of things in the possession, custody or control of another party to the litigation, in this case, of course, the state. Similar provisions of Code § 81A-134 apply only to civil actions. A victim or other witness is not a "party" to the crime. Code § 26-801. This witness is not in the "possession, custody or control" of the state which is the prosecutorial agency. The bullet is in the possession of the witness. The purpose of a motion to produce is to assure that the storehouse of facts available does not remain within the exclusive possession of one of the adversarial parties. "To this date, there has been no holding that Brady [Brady v. Maryland, 373 U. S. 83] confers on the defense a right to receive information or evidence greater than that possessed by the prosecution, and we decline to so hold now." Calley v. Callaway, 519

F2d 184, 224.

*Spence v. State,* 238 Ga. 399 is not relevant to this point. *Spence* held that a jury foreman was not ineligible to serve because he was the father of a police officer who investigated the case. Likewise, in *Prysock v. State,* 44 Ga. App. 229 (161 SE 153) a witness wounded in the same assault as the victim for whose death the defendant was on trial was held not a prosecutor so as to make a relative ineligible to serve on the jury. *Ethridge v. State,* 164 Ga. 53 (2) (137 SE 784), does hold that one who by affidavit instigates the prosecution on which the indictment is based is a prosecutor *for jury selection purposes* so as to render a prospective related relative ineligible as a juror. Such a situation does not appear in this record; even if it did we cannot infer from this fact that the witness, who is at most a prosecuting witness, loses his Fourth Amendment rights to the privacy of his own body. Nor can we infer that the witness is "in the custody or possession of" the state which is required before he or the contents of his body is "produced." Nor can we infer that the trial is a trial of the defendant by the witness; it is rather a proceeding by the state to determine if the defendant has violated its laws.

It is almost unheard of in the annals of law to seek evidence from the body of a victim. In State v. Smith, 260 S2d 489, 491 (Fla.), where a physical examination of prosecuting witnesses was sought, the court, refusing the request held: "No right is held more sacred, or is more carefully guarded, by the common law, than the right of an individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. Union Pacific Railroad Company v. Botsford, 141 U. S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891). The common law does not authorize a court to require the physical examination of a witness, because discovery in criminal cases was unknown to the common law." That there is no statutory right of discovery in Georgia (except the constitutional Brady rights of the defendant to material in the files of the state) has been reiterated by this court on numerous occasions. *Godwin v. State,* 133 Ga. App. 397 (211 SE2d 7); *Martin v. State,* 135 Ga. App. 4 (2) (217 SE2d

312); *Julian v. State,* 134 Ga. App. 592 (3) (215 SE2d 496). "There is no law in this state for discovery per se in criminal cases. . ." *Houser v. State,* 234 Ga. 209 (11) (214 SE2d 893).

The majority opinion states that "We view the *Brown* case as controlling here and conclude that the dismissal of Haynie's motion to produce was erroneous." *Brown v. State,* 238 Ga. 98 (231 SE2d 65) involved a motion by the defendant to produce twelve documents located in the district attorney's files, and which were accordingly in the possession and custody of the state and available to it in working up its case against the defendant. I do not imagine that the *state* would be obligated to go out and retrieve these same documents for the use of the defendant if they were not in its possession, and no court has ever so held.

(2) Where the property sought to be produced lies within the body of the victim of the crime the question leaves the storehouse of information issue and turns upon the Fourth Amendment rights of the individual citizen. I have been unable to find a case, and none has been cited, holding that a *witness to a crime* may be compelled by either the state or the defendant to undergo procedures involving the cutting open of his flesh and the invasion of his person in order to obtain evidence either for or against the state. If the defendant has this right, of course, the state also has it. Never since the Merchant of Venice does there appear to be a case where the cutting open of a person not directly accused of guilt to obtain a pound of flesh was sanctioned, and even that involved, as does *Creamer v. State,* 229 Ga. 511 (192 SE2d 350), one of the parties litigant. Surely this cannot be done without a search warrant? "The right to object to an unreasonable search and seizure is a privilege which is personal to those whose rights have been infringed. . ." *Dutton v. State,* 228 Ga. 850, 851 (188 SE2d 794). The holding in the case at bar is therefore that the victim of crime automatically loses his Fourth Amendment rights. And even if there were a warrant, which there is not, can the state compel me to be anesthetized and brought to the operating table to obtain evidence for or against a defendant? The forcible procurement of evidence from the body of the citizen

constitutes an unreasonable search and seizure under Fourth Amendment standards. "The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U. S. 505,511 (97 ALR2d 1277, 1282). I would be distressed to find Georgia the first state ever to sanction it, and especially at a hearing where the witness is not even represented.

It follows that a hearing of the type envisioned by the majority opinion here is also violative of the due process clauses of the State and Federal Constitutions. In Rochin v. California, 342 U. S. 165, it was held grounds for suppression that the court seized a defendant who, on arrival of the police, swallowed two capsules, and was forcibly administered an emetic for their retrieval. "The Due Process Clause places upon this Court the duty of exercising a judgment, within the narrow confines of judicial power in reviewing State convictions, upon interests of society pushing in opposite directions. . . It would be a stultification of the responsibility which the course of constitutional history has cast upon this Court to hold that in order to convict a man the police cannot extract by force what is in his mind but can extract what is in his stomach." Id., pp. 171, 173.

I must respectfully dissent.

I am authorized to state that Judge Marshall and Judge McMurray join in this dissent.