32404. THE STATE v. HAYNIE.

JORDAN, Justice.

This court granted certiorari in *Haynie v. State,* 141 Ga. App. 688 (234 SE2d 406) (1977), to consider the question of whether the victim of a crime can be required to undergo surgery to remove a bullet from his body.

Haynie was convicted of the offense of aggravated assault by shooting. Prior to the trial he filed a motion to produce reciting that: the state has possession of the gun which was in his possession the night of the shooting; he has learned that the bullet which struck the victim is still in his person; if the bullet is removed, he believes that ballistic tests will verify that the bullet was not fired by the gun which he had in his possession that night; he is willing and able to bear the expense of the removal of the bullet and the ballistic tests. He prayed that the court issue an order requiring the removal of the bullet from the victim and the production of the gun, and that ballistic tests be made upon them. The trial judge denied this motion. The Court of Appeals reversed, with three judges dissenting, holding that hearings should be held to determine whether removal of the bullet would be dangerous to the victim, and, if production is required, whether the materials produced justify a new trial.

The Court of Appeals relied on the decisions of this court in *Creamer v. State,* 229 Ga. 511 (192 SE2d 350) (1972); and *Brown v. State,* 238 Ga. 98 (231 SE2d 65) (1976).

In *Creamer v. State,* supra, criminal warrants were issued for the arrest of Creamer for two murders. A search warrant was sought by the state to allow it to remove a bullet which Creamer admitted was in his body. The

application was supported by affidavit of an agent of the Georgia Division of Investigation that an informer had given information connecting Creamer with the murders. The judge hearing the application for search warrant ordered that Creamer be given a physical examination to determine if his health would be substantially impaired by the removal of the bullet. The physician reported to the court that the bullet could be removed in a minor operation with no risk to Creamer. On appeal to this court, we determined, under the authority of Schmerber v. California, 384 U. S. 757 (86 SC 1826, 16 LE2d 908) (1965), and under the evidence in the case, that Creamer's Fourth and Fifth Amendment rights would not be violated by the removal of the bullet.

The Court of Appeals in citing *Creamer* stated: "We fail to see why the state should be able to acquire such evidence against asserted violations of the constitutional protection of the Fourth and Fifth Amendments if a criminal defendant is denied the same privilege."

The Fourth Amendment of the United States Constitution (Code § 1-804) guarantees the right of the people to be secure in their persons against unreasonable searches and seizures. A search for evidence by the intrusion into a person's body against his will can be reasonable only under very limited circumstances. The *Creamer* case, and the Schmerber case on which it relies, authorized a search into a person's body against his will in instances where the state had good reason to believe that the person had committed a crime, and where the manner of the search was reasonable.

The dissenting opinion of the Court of Appeals cites a decision of the Supreme Court of Florida in which that court held that it was a violation of the Fourth Amendment rights of witnesses of a crime to require that they take examinations for visual acuity, notwithstanding that the defendant's case depended in whole or in part upon his identification by these witnesses. State v. Smith, (Fla.) 260 S2d 489 (1972).

We have the same view as to the rights of witnesses, and hold that it could not be a reasonable search, which would not violate the Fourth Amendment of the Constitution, to require the victim of a crime to undergo

surgery against his will to remove a bullet lodged an inch from his spine, even if medical testimony could be produced that the operation would not be dangerous to his health.

In *Brown v. State,* supra, this court held that a person accused of crime can utilize the notice to produce provision of Code Ann. § 38-801 (g) (Ga. L. 1966, p. 502; 1968, pp. 434, 435; 1968, p. 1200). The state cannot, under any theory, be deemed to have in its possession a bullet lodged in the body of the victim of a crime. The state does not have any more right to require the removal of a bullet from the body of a living victim than does the accused.

The state could not be required to produce the bullet lodged in the victim's body under a "Brady" motion. Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). Such a motion does not reach material which is not in the state's possession. *Hicks v. State,* 232 Ga. 393, 394 (207 SE2d 30) (1974); *Rini v. State,* 236 Ga. 715, 717 (225 SE2d 234) (1976); *Watts v. State,* 141 Ga. App. 127, 128 (232 SE2d 590) (1977).

The record does not indicate whether Haynie made any effort to persuade the victim to voluntarily submit to an operation to remove the bullet. We note, however, that evidence that the bullet in the victim was not fired from the gun claimed by Haynie to have been in his possession at the time of the shooting incident would not be conclusive evidence of his innocence. Haynie did not give the gun in his possession to police officers on the Friday night of the shooting, but on the next Monday. The value of the evidence concerning the bullet would depend on the jury's determination of Haynie's credibility. We also note that eyewitnesses testified that they saw the defendant take a pistol from his sister's purse and shoot the victim. Therefore the guilt or innocence of the defendant does not rest entirely on ballistic testimony concerning the gun and the bullet. Such testimony is expert opinion evidence which can be accepted or rejected by the jury.

The Fourth Amendment right of the victim to be secure against an unreasonable search must prevail over the right of the accused to obtain evidence for his defense. The holding of the Court of Appeals ordering a hearing on the question of the removal of the bullet from the victim is

reversed, and the case is remanded for disposition consistent with this opinion.

*Judgment reversed. All the Justices concur, except Hall, J., who concurs specially, and Bowles, J., who concurs in the judgment only. Marshall, J., disqualified.*

ARGUED SEPTEMBER 12, 1977 — DECIDED FEBRUARY 7, 1978 — REHEARING DENIED MARCH 1, 1978.

*Richard E. Allen, District Attorney, Stephen E. Curry, Assistant District Attorney,* for appellant.

*Sam B. Sibley, Jr.,* for appellee.

*Walker P. Johnson, Jr., District Attorney, Keenan & Calcagno, Don C. Keenan, Gerald E. Wilkerson, Tony H. Hight, Charles T. Shean, III, Johnny R. Moore,* amicus curiae.

HALL, Justice, concurring specially.

I agree that the Court of Appeals erred in ruling that the facts might authorize involuntary surgical removal of this bullet from the crime victim's body; but I have reservations about the rationale of the majority opinion.

In my judgment, Haynie cannot succeed in requiring extrication of this bullet from the victim because there is neither common law nor statutory authorization for such action — *not* because the victim's Fourth Amendment rights prohibit it.

The fountainhead of the Court of Appeals' decision authorizing the surgery under certain conditions appears to be *Creamer v. State,* 229 Ga. 511 (192 SE2d 350) (1972), in which this court held that it did not violate the Fourth nor the Fifth Amendments nor Georgia statutes to order the surgical excision of a bullet lodged in the accused's body, when the state sought it as evidence. This court found that the surgery required would be a "minor intrusion" into the body, authorized by Schmerber v. California, 384 U. S. 757 (1966). Had I been on this court at the time *Creamer* was decided, I am not sure I could have concurred. Schmerber was far different from the *Creamer* facts.

In Schmerber, the United States Supreme Court

approved involuntary taking of a blood sample from one accused of drunk driving, against claims of a violation of the Fourth and Fifth Amendments. The court deemed the blood test unobjectionable because it was common and risk-free. "Such tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain." 384 U. S. at 771. " 'The blood test procedure has become routine in our everyday life. It is a ritual for those going into the military service as well as those applying for marriage licenses. Many colleges require such tests before permitting entrance and literally millions of us have voluntarily gone through the same, though a longer, routine in becoming blood donors." 384 U. S. at 771, n. 13.

Surgery is neither "common" in the Schmerber sense, nor risk-free; and the court in Schmerber warned in closing that "It bears repeating, however, that we reach this judgment only on the facts of the present record * * * [and] in no way . . . [approve] more substantial intrusions, or intrusions under other conditions." 384 U. S. at 772. See generally Note, 1967 Duke L. J. 366; Note, 41 Conn. B. J. 125 (1967). From blood test to surgery is a long way.

The United States Supreme Court has never expressly approved a surgical intrusion into the body under the Schmerber rationale. It has cited Schmerber subsequently in several decisions, e.g., Cupp v. Murphy, 412 U. S. 291 (93 SC 2000, 36 LE2d 900) (1973) (forcible fingernail scrapings), but no Supreme Court decision has involved so serious a bodily intrusion as *Creamer* or the instant case. However, other courts have taken the *Creamer* path. E. g., United States v. Crowder, 543 F2d 312 (D. C. Cir. 1977) cert. den. 429 U. S. 1062 (1977) (surgery approved with safeguards); State v. Anonymous, 32 Conn. Supp. 306 (353 A2d 789) (1976) (dictum). See State v. Overstreet, 551 SW2d 621 (Mo. 1977) (admission of bullet from defendant's body held reversible error — absence of proper safeguards); Bowden v. State, 510 SW 2d 879 (Ark. 1974) (surgery involving heavy risk disallowed).

It is important to note that where surgery has been

approved, it has usually been approved with stringent safeguards on facts which make a strong showing of the relevance of and need for the evidence which is to be retrieved. E. g., United States v. Crowder, supra. Cf., Annots., 25 ALR2d 1407 (1952); 16 LE2d 1332 (1967); 22 LE2d 909, § 5 (1970). For me, it is determinative that the majority opinion acknowledges that on the facts of this case this bullet, even if retrieved, will prove very little. As I construe the cases authorizing surgery, the instant case does not present a proper need for "Schmerber" surgery even assuming that surgery is sometimes admissible; and this conclusion could in itself decide the instant case without further consideration of the Fourth Amendment rights of witnesses and victims.

Another point which for me should end this case short of the reach achieved by the majority opinion is that the statute under which Haynie seeks this bullet from the victim's body simply will not authorize his action. Of course, he may not implement a search such as the official search of an arrestee which was the state's procedure in Schmerber; he needs a vehicle for discovery. The Court of Appeals ruled that he might demand the bullet under a notice to produce authorized by Code Ann. § 38-801 (g) which allows discovery to parties. To overcome the fact that the section does not by its terms cover this action, the Court of Appeals construed the victim to be a "party" to the case because he must be analogized to a prosecutor; and concluded that the motion served upon the state was appropriate because the state was "counsel" to the "party," thus satisfying the statutory language. I disagree. The state is not counsel to the victim: the state represents the public and may proceed even without the victim's desire and cooperation. The statute simply will not stretch so far as the Court of Appeals has sought to pull it; and Haynie may not acquire this bullet from the victim for the simple reason that there are no procedures extant which would permit him to do so. Yet the majority opinion presses further on, to the ruling which for me is the most worrisome, because it could prove to be a real obstacle to efforts to expand upon our state's minimal criminal discovery procedures.

The majority makes some very bad and some very

unwarranted Fourth Amendment law in adopting as the law of Georgia a misreading of the Supreme Court of Florida's opinion in State v. Smith, 260 S2d 489 (1972). The majority read that the decision to hold "that it was a violation of the Fourth Amendment rights of witnesses of a crime to require that they take examinations for visual acuity," and the majority opinion rules that "We have the same view . . . and . . . it could not be a reasonable search, which would not violate the Fourth Amendment of the Constitution, to require the victim of a crime to undergo surgery against his will. . ."

In fact, neither the Smith case, nor Union Pacific R. Co. v. Botsford, 141 U. S. 250 (11 SC 1000, 35 LE 734) (1891) in which the Smith ruling was grounded, involved the Fourth Amendment at all. Instead, those cases were concerned with the absence of discovery procedures in common law and statute. The Union Pacific case was a tort action for personal injury brought against the railroad by a passenger, and the issue was whether the railroad could compel her to submit to medical examination. The court wrote: "The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow. To compel any one, and especially a woman, to lay bare the body, or to submit to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass; and no order or process, commanding such an exposure or submission, was ever known to the common law in the administration of justice between individuals, except in a very small number of cases, based upon special reasons, and upon ancient practice, coming down from ruder ages, now mostly obsolete in England, and never, so far as we are aware, introduced into this country." 141 U. S. at 252. The court concluded: "So far as the books within our reach show, no order to inspect the body of a party in a personal action appears to have been made, or even moved for, in any of the English courts of common law, at any period of their history." 141 U. S. at 253.

Similarly, the Smith decision concluded that neither common law nor the court's rules permitted the "discovery" of the witnesses' visual acuity through medical examination. That is a far cry from the ruling the

majority opinion makes today, that such a search violates the Fourth Amendment and thus may *not ever* be authorized by rule, custom or statute. Neither Smith nor Union Pacific provides any authority whatever for a Fourth Amendment decision. I consider the ruling especially unwise because it casts a deep shadow of doubt onto the simplest and least intrusive inquiries into the condition of victims and witnesses which might be legislatively authorized as criminal discovery.

Another insurmountable problem I see with the majority opinion's approach on this issue is that it absolutely cannot be squared with *Creamer*. The Fourth Amendment applies to everyone, accused as well as victim. If it does not violate the accused's Fourth Amendment rights to perform involuntary surgery on him (and this is what *Creamer* ruled), how does it violate the Fourth Amendment rights of the victim to perform similar surgery on him? I submit that there is no logical basis under the Fourth Amendment for treating the victim and the defendant differently; and this fact for me reemphasizes that the proper approach to this issue is not through a warping of Fourth Amendment principles to meet the problem at hand, but is through examination of our statutory discovery provisions.

Under those provisions, in my view, the accused cannot obtain this bullet because neither the common law nor Code Ann. § 38-801 (b) and (g) gives him authority for doing so. If the General Assembly passed a statute subjecting witnesses or victims to such a mode of bodily discovery, *then* we might have to evaluate that statute under the Fourth Amendment. But I believe that no Fourth Amendment issue is before us today, and this totally unwarranted and I think unwise Fourth Amendment ruling will do nothing but pose a big roadblock even to limited attempts to expand our state's miniscule law on criminal discovery.