171 Ga. App. 373 (1984)
319 S.E.2d 465
J. B.
v.
STATE OF GEORGIA.
68297.
Court of Appeals of Georgia.
Decided June 6, 1984.
Rehearing Denied June 27, 1984.
Robert M. Goldberg, for appellant.
Lewis R. Slaton, District Attorney, Joseph J. Drolet, George J. Robinson, Jr., Richard E. Hicks, Assistant District Attorneys, for appellee.
BIRDSONG, Judge.
J. B., a 15-year-old, was found guilty at a delinquency hearing of the crime of rape. He was sentenced to five years restrictive custody. J. B. brings this appeal enumerating five alleged errors. Held:
1. In one enumeration, J. B. complains the evidence is insufficient to sustain the findings of delinquency. The juvenile judge was authorized to conclude based upon the evidence presented that on the last day of school in the spring of 1983, J. B., along with four other boys, was cutting class and otherwise showing a disdain for school rules. During the lunch hour, the five boys, aged 14 and 15, were in the school auditorium. One or two were taking turns playing the piano. While they were there, the victim, a 14-year-old girl, came to the door of the auditorium looking for a particular boy. The 14-year-old girl was a retarded learner taking special education classes in the public high school. She had an IQ of 65 and the mental level of about a 12-year-old.
The girl came three times to the auditorium looking for the same boy. On the third occasion, one of the four boys got behind the girl and pushed her from the rear while J. B. pulled on her hands. She was pulled up some steps in the auditorium to a room at the third level of the auditorium. There she was either partially or fully disrobed (the record is not clear) and sexually penetrated, first by J. B., then by a second co-defendant, by the boy she was looking for in the auditorium in the first place (a third co-defendant), and finally a second *374 time by J. B. Evidence was offered that the girl did not cry out or scream or actively seek to escape. There was also evidence that the girl generally became very passive when something disagreeable occurred. She told the boys not to do what they sought to do. She told them to stop and that she had to go to lunch or that she would miss her class. There was evidence from an eyewitness that she did not agree with what the boys were doing and sought to leave. She testified that she did not try to leave because she believed the boys would stop her. She did not scream because she thought they would just put their hands over her mouth.
J. B. contends that the evidence thus presented did not support a finding that the act was attended by force or against the will of the victim. It was agreed that the girl was not physically injured nor did she believe that the boys were going to "harm" her. In the absence of overcoming force or violence, J. B. contends there is no evidence of absence of consent.
The evidence in this case discloses an attack upon a body governed by a small child's mind. The trial court found that the girl did not consent, voiced her objection and the boys were aware of that lack of consent; she was pulled to a place to which she did not voluntarily go, was undressed without any help by herself, forced down upon the floor, and sexually penetrated in spite of her objections.
Under such a state of facts, the trial court found sufficient evidence of force and lack of consent. That finding dissipated any presumption of innocence. Powers v. State, 150 Ga. App. 25 (1) (256 SE2d 637). We review the evidence only to determine if there is sufficient evidence to convince a rational trier of fact of guilt beyond reasonable doubt, and in that search the evidence is viewed in the light most favorable to the verdict. Pierce v. State, 243 Ga. 454 (254 SE2d 838); Laws v. State, 153 Ga. App. 166 (264 SE2d 700). Even though this act was not accompanied by an overwhelming show of force, nor by a substantial degree of violence or resisted by the victim vigorously with great outcry, we are satisfied that the juvenile court was warranted in finding guilt of rape beyond a reasonable doubt. Baldwin v. State, 153 Ga. App. 35, 37 (264 SE2d 528).
2. J. B. contends the trial court erred in denying a motion to dismiss the petition because the State failed by diligent effort to fix the time of hearing of the delinquency petition within 10 days of the filing of the petition. The facts show that a preliminary hearing was held on June 20, 1983. The petition was filed on that day after a finding of probable cause was entered. The trial court set hearing on June 28, eight days thereafter. However, a rape analysis kit had not been returned from the state crime lab; therefore, on June 27, the assistant prosecutor telephoned counsel for J. B. and indicated that the hearing would not be ready on the next day and informed counsel the juvenile *375 court had granted a continuance. Counsel for J. B. responded that inasmuch as that was his first notice of a hearing at all, he could not be ready on June 28 and thus had no objection to the continuance. The case actually was called for hearing later in July well after the expiration of ten days following the filing of the delinquency petition.
J. B. contends that the mere setting of the hearing eight days after the filing of the petition without any preparation by the State, no issuance of summonses, and no notification to defense counsel does not amount to a compliance with the ten-day hearing requirement. However, the fact is inescapable that a hearing date had been fixed within ten days from the filing of the petition. While we might have pause in our conclusion of the sufficiency of the compliance because of such brief notice to the juvenile of the date and time of the hearing, the statute required only that a hearing date be set within ten days and that was done. This satisfied the essential requirement of the law. Brown v. Fulton County Dept. of Family &c. Services, 136 Ga. App. 308, 309 (1) (220 SE2d 790). The failure of the State to notify the juvenile until a day before the hearing was set (and this notice accomplished by advisement that the trial court had granted a continuance) was rendered harmless by J. B.'s lack of objection to the continuance already granted, apparently within the sound discretion of the juvenile court. See E. S. v. Ga., 134 Ga. App. 724, 725 (1) (215 SE2d 732).
3. J. B. argues the trial court erred in refusing to grant him a free copy of the pretrial transcript as an indigent. However, there was evidence that J. B.'s mother had retained the services of an attorney in a divorce action pending against J. B.'s father. That same attorney represented J. B. at the juvenile hearings. There likewise was evidence that J. B.'s father was a financially solvent contractor. Based upon these facts, the juvenile court required an affidavit of indigency supported by evidence in view of the contest of this issue by the State. No affidavit of indigency was ever filed nor was there affirmative evidence offered that the father flatly refused to help in the legal costs (though there was evidence that at one time the father said he did not want to get involved).
After reviewing the above evidence, the juvenile court ruled J. B. did not meet the standards of indigency and denied a free transcript of the preliminary hearing. The ruling of the court on issues of fact concerning the ability of a party to pay costs or give bond is final and not subject to review. Quick v. State, 166 Ga. App. 492 (4) (304 SE2d 916); Bray v. State, 152 Ga. App. 404 (263 SE2d 184).
4. J. B. moved the trial court to order a psychiatric examination of the victim because of her mental deficiency and her observable passivity. The trial court declined to order the victim to submit to such an examination. J. B. now complains that this refusal deprived him *376 of due process and effective examination of the victim. In fact a qualified teacher of disadvantaged children who was aware of this particular girl's IQ, deportment, and personality, and trained in such matters, was present and subject to examination by the defense. Moreover, the victim herself was subjected to extensive cross-examination.
We are aware of no statutory authority nor case law in this state that mandates the involuntary examination of a rape victim. In another jurisdiction whose case law we find instructive though not binding, it has been held that it is within the trial court's discretion to grant or deny a request for psychiatric examination of a witness. See United States v. Roach, 590 F2d 181 (6) (5th Cir. 1979); United States v. Jackson, 576 F2d 46 (5) (5th Cir. 1978). In this State, it has been held that the rights of the victim of an aggravated assault outweigh the discovery rights of the defendant who sought to recover a bullet from the victim's body. See State v. Haynie, 240 Ga. 866, 868 (242 SE2d 713). Under the circumstances of this case, we discern no abuse of discretion in the denial of a psychiatric examination of the victim.
5. In his last enumeration of error, J. B. complains that the court erred in proceeding in the absence of his natural father. At the beginning of the trial, it was shown that the father expressed no interest in the boy, denied paternity, and the mother was not sure where the father might be located. However, the mother and grandparents were present. Later during the trial, the counsel representing J. B., while questioning a State's witness (a probation officer), stated on the record that J. B.'s natural father was present and had been present throughout the proceedings. We can only assume that the natural father might not have been present before the trial of the issue but was in fact present thereafter. We find no merit in this enumeration.
Judgment affirmed. Quillian, P. J., and Carley, J., concur.