## A97A2412. PARK v. THE STATE.
### (495 SE2d 886)

BEASLEY, Judge.

Dong Jin Park was convicted of aggravated battery (OCGA § 16-5-24) for repeatedly striking Eung Chul Lee and rendering his left eye useless. The issues are whether the trial court erred by (i) declining to order Lee to undergo an independent eye exam, (ii) allowing the testimony of an officer who was not on the State's witness list and who testified to a statement made by Park to another officer, (iii) failing to charge the jury on justification, (iv) allowing the State to present impeaching testimony as to statements of Park's wife, the State's witness, and (v) allowing the State to call unlisted rebuttal witnesses.

During dinner at a restaurant one evening, Lee informed his employer Park he was quitting. Hours later, after the two men had drunk substantial amounts of alcohol, Park's wife intended to drive them home in her van. Lee declined, stating he wanted to take a taxi, and when Park tried to force Lee into the van, Lee resisted. Park struck Lee in the left eye, and he collapsed. Park then bit him on the back, kicked him in the head, and beat him. Lee's testimony that he has permanently lost sight in his eye was corroborated by his ophthalmologist. Park testified he did not strike Lee but merely wrestled with him when the two fell to the ground following Lee's refusal to enter the van.

1. Two months prior to trial Park moved unsuccessfully to compel Lee to undergo an independent medical examination of his eye, claiming Lee's eye injuries were pre-existing or did not deprive him of his eye nor render it useless. Following conviction, Park sought a new trial because of the refusal of an independent eye exam, but the court denied the motion.

Citing *Sabel v. State*,[1] *Patterson v. State*,[2] and three federal cases,[3] Park contends he was entitled to the examination because the condition of the eye was critical to his defense, for aggravated battery requires proof that the victim was deprived of a body member or that the body member was rendered useless.[4] *Sabel* held due process requires that a "criminal defendant on trial for his liberty is entitled on motion timely made to have an expert of his choosing, bound by

---

[1] 248 Ga. 10, 16-18 (6) (282 SE2d 61) (1981), overruled on other grounds, *Rower v. State*, 264 Ga. 323, 325 (5) (443 SE2d 839) (1994).

[2] 238 Ga. 204 (232 SE2d 233) (1977).

[3] *White v. Maggio*, 556 F2d 1352, 1356-1358 (5th Cir. 1977) (inspection of bullets); *United States v. Herndon*, 536 F2d 1027, 1029 (5th Cir. 1976) (inspection of "moonshine" liquor); *Barnard v. Henderson*, 514 F2d 744, 746 (5th Cir. 1975) (inspection of murder weapon and bullet).

[4] OCGA § 16-5-24 (a).

appropriate safeguards imposed by the court, examine critical evidence whose nature is subject to varying expert opinion."[5] *Sabel* concluded the defendant was entitled to have paint samples examined that linked him to the crime. *Patterson* held the defendant could have his expert examine the contraband on which his possession charge was based.

Park did not want to examine contraband or paint samples; he wanted to examine a person. Persons are protected by the Fourth Amendment from unreasonable searches and seizures, and surgical procedures on or medical examinations of a person's body cannot be compelled unless the state has good reason to believe the person has committed a crime.[6] "Our Supreme Court has recognized that in criminal cases it is violative of the rights of witnesses or victims for them to be ordered to submit to surgery or examinations for visual acuity. [Cit.]"[7]

"We are aware of no statutory authority nor case law in this state that mandates the involuntary examination of a . . . victim."[8] "The Fourth Amendment right of the victim to be secure against an unreasonable search must prevail over the right of the accused to obtain evidence for his defense."[9] Just as victims may decline to be interviewed by defense counsel, they may also decline to be examined by defendant's experts.[10]

Park's rights as to the ascertainment of truth concerning the eye condition were adequately protected inasmuch as Lee and his ophthalmologist were subjected to extensive cross-examination.[11] The court did not err.

2. Park enumerates as error the allowance of Officer Putnam's

---

[5] 248 Ga. at 17-18; see *Patterson*, supra, 238 Ga. at 206 (defendant charged with possession may have contraband examined); *Rogers v. State*, 224 Ga. App. 359, 360 (2) (480 SE2d 368) (1997) (inspection of syringe).

[6] *State v. Haynie*, 240 Ga. 866, 867-868 (242 SE2d 713) (1978); see *Weems v. State*, 268 Ga. 142, 145 (8) (485 SE2d 767) (1997) (surgery to remove bullet from victim denied); see also *Young v. State*, 146 Ga. App. 167, 168 (2) (245 SE2d 866) (1978) (obtaining evidence in possession of victims would constitute search and seizure).

[7] *Collar v. State*, 206 Ga. App. 448 (1) (426 SE2d 43) (1992) (psychological examination of victim denied); see *Watkins v. State*, 212 Ga. App. 296, 297 (1) (441 SE2d 801) (1994) ("in criminal cases it is violative of the rights of the witnesses or victims for them to be required to submit to surgery or examinations").

[8] *J. B. v. State*, 171 Ga. App. 373, 376 (4) (319 SE2d 465) (1984) (psychiatric exam of victim to test why she did not resist rape denied); see *Marcello v. State*, 220 Ga. App. 284, 285 (1) (469 SE2d 252) (1996) (expert examination of nonconsenting victim denied); *Pope v. State*, 197 Ga. App. 832, 833 (4) (399 SE2d 552) (1990) (psychiatric examination of victim denied); *Rhodes v. State*, 193 Ga. App. 28, 29 (2) (386 SE2d 857) (1989) (psychiatric exam of witnesses denied). Compare *Ely v. State*, 192 Ga. App. 203 (1) (384 SE2d 268) (1989) (court allowed psychological examination of consenting victim).

[9] *State v. Haynie*, supra, 240 Ga. at 868; *Weems v. State*, supra, 268 Ga. at 145 (8).

[10] *Collar*, supra, 206 Ga. App. at 448 (1).

[11] See *J. B.*, supra, 171 Ga. App. at 376 (4).

testimony even though he was not on the State's witness list. Park complains further that although the State did not provide him prior notice of a "custodial" statement, the court allowed Officer Putnam to testify that he overheard Park say to the investigating officer "he was trying to teach [Lee] a lesson."

(a) Park was not entitled to a list of the State's witnesses, so he may not complain of the omission of Officer Putnam's name from the list. In October 1996, Park demanded a list of the State's witnesses pursuant to OCGA § 17-7-110. But OCGA § 17-7-110 had been repealed as of January 1, 1995 and replaced with the new criminal discovery statute, OCGA § 17-16-1 et seq.[12] Article 1 of Chapter 16 of Title 17 applies to felony cases indicted or docketed after January 1, 1995, and requires the disclosure of trial witness lists only if the defendant elects by written notice to have the article apply to him.[13] Park was indicted in September 1996 and did not opt to have the discovery statute (with its corresponding obligations on him) apply. Accordingly, the State was not required to provide a trial witness list.

Further, the omission of the officer's name from the list was unintentional, for the prosecuting attorney did not learn of his identity until the night before trial. Park's counsel was afforded the opportunity to interview the officer before he testified. Thus, even if the statute applied, its purpose was fulfilled.[14] "[A] trial court may allow an unlisted witness to testify if the accused is given an opportunity to interview the witness prior to the time he takes the stand. [Cit.]"[15]

Park cites but does not support with argument Art. I, Sec. I, Par. XIV of the 1983 Georgia Constitution, which requires the State to furnish an accused "on demand, with a list of the witnesses on whose testimony such charge is founded." " 'We will therefore consider the invocation of the state constitution as abandoned. (Cits.)' [Cit.]"[16] Even if we did consider it, this constitutional provision does not require the State to provide a list of trial witnesses, but only a list of witnesses on whose testimony the charge was founded.[17]

(b) Park's argument on the "custodial" statement fails on similar grounds. Assuming the statement was custodial, the State was not required to provide it to Park. Citing OCGA § 17-7-210, Park demanded a copy of all custodial statements taken by police. OCGA § 17-7-210 was also repealed as of January 1, 1995, and replaced with

---

[12] Ga. L. 1994, pp. 1895, 1896, 1899-1908, §§ 1, 4.
[13] OCGA §§ 17-16-2 (a); 17-16-3.
[14] *White v. State*, 253 Ga. 106, 109-110 (3) (317 SE2d 196) (1984).
[15] *Thrasher v. State*, 265 Ga. 401, 402 (3) (456 SE2d 578) (1995).
[16] *Cook v. State*, 199 Ga. App. 523, 524 (2) (405 SE2d 341) (1991).
[17] *Britten v. State*, 221 Ga. 97, 99 (2) (143 SE2d 176) (1965).

the same discovery statute.[18] Since Park did not opt in under the statute, the State was not obliged to disclose statements Park made to the police.[19]

Park contends that OCGA § 17-16-22 of the new discovery statute requires this disclosure on demand. This section is a part of Article 2 of Chapter 16 of Title 17, which article applies only to misdemeanor cases or to felony cases indicted or docketed prior to January 1, 1995.[20] It does not apply to Park's 1996 felony indictment.

3. Park charges that counsel was ineffective in citing the wrong Code section in his demand for the "custodial" statement and in failing to object to hearsay by Officer Putnam. Following an evidentiary hearing on the motion for new trial, the court rejected the charge.

" 'Generally, the burden is on the defendant claiming ineffectiveness of counsel to establish (1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous. In the absence of testimony to the contrary, counsel's actions are presumed strategic. The decisions on which witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, what trial motions should be made, and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with the client.' [Cit.]"[21]

(a) It was not the citing to OCGA § 17-7-210 that caused the demand for custodial statements to be unavailing; it was the decision not to opt in under the new discovery statute. As a benefit of this decision, Park did not incur the obligation to provide discovery to the State.[22] This was a tactic or stratagem that will not be second-guessed, particularly where Park did not even query trial counsel about this decision during the evidentiary hearing on the motion for new trial.

(b) Nor was there ineffective assistance in trial counsel's failure to object to Officer Putnam testifying to two instances of alleged hearsay. The first instance occurred during cross-examination, when Park's counsel intimated Officer Putnam may not have understood Park at the time he said he was trying to teach Lee a lesson. Counsel

---

[18] Ga. L. 1994, pp. 1895, 1897-1908, §§ 2, 4.

[19] See OCGA §§ 17-16-2 (a); 17-16-4 (a) (1).

[20] OCGA § 17-16-20.

[21] *Bevil v. State*, 220 Ga. App. 1, 4 (7) (c) (467 SE2d 586) (1996).

[22] See, e.g., OCGA §§ 17-16-4 (b); 17-16-5; and 17-16-7.

queried Officer Putnam as to the quality of Park's English, and he responded: "I understood him. [The investigating officer] could understand him. I mean, it is not the perfect English, but we understood. We had no problem understanding what he was saying." This is not inadmissible hearsay. Putnam did not testify to any statement other than what Park himself said.[23] His comment that the other officer also understood Park was likely based on his observations at the time. Thus, Park's counsel had sound reason not to object.

The second instance occurred when Officer Putnam testified Lee was advised he could take out a warrant against Park. This was in the context of explaining why the officers arrested Park only for public drunkenness (OCGA § 16-11-41), i.e., the victim was advised that he, not the officers, would be responsible for filing any battery charges. This was admissible to explain the officers' conduct;[24] a hearsay objection would not have been valid.

The evidence supports the finding that counsel's actions did not fall below an objective standard of reasonableness.

4. Park enumerates as error the court's failure to charge the jury on justification. Park did submit complete charges on the subject but no evidence warranted the charge. All witnesses, including Park, confirmed that Park was the aggressor. Park testified that he grabbed Lee's shoulders to force him into the van, and that when Lee tried to push him away they fell down together and wrestled, with Park's arms flailing.

"A person is not justified in using force . . . if he . . . [w]as the aggressor . . . unless he withdraws from the encounter and effectively communicates to such other person his intent to do so. . . ."[25] The evidence is undisputed that Park was the aggressor and that he made no effort to communicate a withdrawal from the encounter. "Since a person is not justified in using force if he was the aggressor, OCGA § 16-3-21 (b) (3), appellant was not entitled to a charge on justification."[26]

5. It was not error to allow witnesses to testify to Mrs. Park's statements. Lee testified that during the incident Mrs. Park told her husband, "Why you do this way? Don't hit him, don't hit him." Around 7:00 a.m., about four hours after the incident, Mrs. Park came to visit Lee in the hospital. Lee and another witness testified Mrs. Park was upset and crying and asked Lee at the hospital why he did not fight back when Park beat him. Later that morning at about 11:00 a.m., Mrs. Park visited Lee at his parents' home and while cry-

---

[23] See OCGA § 24-3-31 (party admissions are admissible).
[24] OCGA § 24-3-2.
[25] OCGA § 16-3-21 (b) (3).
[26] *Montgomery v. State*, 173 Ga. App. 570, 572 (2) (327 SE2d 770) (1985).

ing told him and his parents her husband acted like an animal. At trial Mrs. Park denied making these statements.

Park moved in limine to exclude the latter two statements. Finding the statements were close in time to the incident and that Lee had gone to the hospital immediately after the incident, the court properly concluded the incident was continuing and allowed the testimony under the doctrine of res gestae.

OCGA § 24-3-3 provides "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." "Our Supreme Court has . . . enunciated more liberal standards for appraising whether statements fall within the parameters of res gestae. [Cit.]"[27] *Andrews v. State*[28] held that "a trial judge's determination that evidence offered as part of the res gestae is sufficiently informative and reliable as to warrant being considered by the jury will not be disturbed on appeal unless that determination is clearly erroneous."[29]

*Brantley v. State*,[30] which found admissible statements made three to four hours after the incident, synthesized the law in this area. "What the law altogether distrusts is not after-speech but afterthought. In cases when a statement is narrative rather than exclamatory, the circumstances must be closely scrutinized, because narrative is generally the result of afterthought. If the declarations appear to spring out of the transaction — if they elucidate it — if they are voluntary and spontaneous, and if they are made at a time so near to it, as reasonably to preclude the idea of deliberate design, then they are to be regarded as contemporaneous. However, no precise time can be fixed a priori when the res gestae ends, but each case must turn on its own circumstances, the inquiry being rather into events than to the precise time which has elapsed. The admissibility of such declarations does not depend upon any arbitrary time or general rule for all cases, but is left to the sound discretion of the court in determining from the time, circumstances and statements in question, whether declarations meet the requirements of being free from all suspicion of device or afterthought. It is also a well established rule of law that if the admissibility of evidence is doubtful, the rules of evidence require that the evidence be admitted and its weight and effect left to the jury."[31]

---

[27] *Taylor v. State*, 176 Ga. App. 567, 574 (4) (b) (336 SE2d 832) (1985).

[28] 249 Ga. 223, 228 (290 SE2d 71) (1982).

[29] See *Williams v. State*, 180 Ga. App. 562, 563 (1) (349 SE2d 797) (1986); *Samples v. State*, 169 Ga. App. 605, 606 (4) (314 SE2d 448) (1984).

[30] 177 Ga. App. 13 (338 SE2d 694) (1985).

[31] (Citations, punctuation and emphasis omitted.) Id. at 14-15 (2); see *Perkins v. State*, 226 Ga. App. 613, 614 (1) (a) (487 SE2d 365) (1997); *Millwood v. State*, 174 Ga. App. 113, 115

Evidence showing the statements were made " 'while the parties were still laboring under the excitement and strain of the circumstances and in such proximity in time as to preclude the idea of deliberation or fabrication' " will support a judicial finding that the statements were sufficiently informative and reliable.[32]

Mrs. Park, a bystander, spoke against her interest; she did not want her husband convicted or found liable for civil damages. Upset and crying, she was still laboring under the excitement and strain of the violent encounter from earlier that morning. The hospital was her first opportunity to speak with Lee about the incident without her husband present, and the residence was the first opportunity to speak with Lee's parents.[33] Her statements were consistent with her outcry while the incident was occurring. It was only at trial, after she had time to think, that she denied making the statements.

The passage of four hours before the first statement and another four hours before the second statement do not preclude a finding of res gestae. Georgia courts have admitted statements made after longer periods of time.[34]

6. Park contends the court erred in allowing the State to impeach its own witness, Mrs. Park. In addition to the statements made at the hospital and the residence denied by Mrs. Park, she also denied telling a police officer Park's trial counsel was her attorney. Park argues that because some of the prior statements were made to lay witnesses, and not to police investigators nor to the prosecuting attorney, the State was not entitled to rely on them and was therefore not entrapped by them.

OCGA § 24-9-81 provides: "A party may not impeach a witness voluntarily called by him, except where he can show to the court that he has been entrapped by said witness by a previous contradictory statement." *Davis v. State*[35] held that a party has been sufficiently entrapped under the statute "[i]f, at the time of the questioning, a party has knowledge of a prior statement by one of his witnesses which contradicts testimony that witness has just given." More recently the Supreme Court held that a "party may impeach its own witness with a prior inconsistent statement without any showing of

---

(2) (329 SE2d 273) (1985).

[32] *Williams*, supra, 180 Ga. App. at 563 (1); see *Ward v. State*, 186 Ga. App. 503, 504 (1) (368 SE2d 139) (1988) (key is spontaneity). Compare *Wilbourne v. State*, 214 Ga. App. 371, 372-373 (1) (448 SE2d 37) (1994) (no evidence that victim's statements were spontaneous).

[33] See *Moseley v. State*, 179 Ga. App. 698, 699 (2) (347 SE2d 686) (1986) (victim's first opportunity to report crime outside presence of perpetrator is admissible as res gestae).

[34] See *Phillips v. State*, 260 Ga. 742, 744, fn. 2 (399 SE2d 202) (1991) (over 12 hours); *Ward*, supra, 186 Ga. App. at 503-504 (1) (day after incident); *Williams*, supra, 180 Ga. App. at 563 (1) (eight hours); *Millwood*, supra, 174 Ga. App. at 115 (2) (nearly 24 hours).

[35] 249 Ga. 309, 314 (3) (290 SE2d 273) (1982).

entrapment or surprise. [Cits.]"[36]

The prior inconsistent statements are not limited to those given to police investigators or prosecuting attorneys. Neither the statute nor the case law imposes such a restriction. Nor should they, for prior inconsistent statements are admissible as substantive and impeachment evidence, regardless of their source.[37]

The court did not abuse its discretion in allowing the State to impeach Mrs. Park.

7. Citing OCGA § 17-7-110, Park enumerates as error the court's allowing the State to call witnesses in rebuttal who were not listed on the State's witness list and of whom the State was aware prior to trial. As discussed earlier, OCGA § 17-7-110 has been repealed,[38] and its replacement does not require a witness list without an election under OCGA § 17-16-2 (a). The two cases cited by Park for the proposition that certain rebuttal witnesses must be listed both assume the old statute applies.[39] Even if it did, "calling an unlisted witness in rebuttal is not error and does not violate OCGA § 17-7-110."[40]

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED JANUARY 21, 1998.

*Drew Findling, Elizabeth L. Rankin, Thomas Y. Choi*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Gregory K. Schwarz, Assistant District Attorneys*, for appellee.

---

[36] *Rollins v. State*, 262 Ga. 698, 699 (1) (425 SE2d 285) (1993). See *Knight v. State*, 266 Ga. 47, 49 (4) (c) (464 SE2d 201) (1995) ("The State was authorized to use the prior inconsistent statement to impeach the witness it had called without a showing of surprise or entrapment"); *Morris v. State*, 228 Ga. App. 90 (491 SE2d 190) (1997); *Lebis v. State*, 212 Ga. App. 481, 485 (8) (442 SE2d 786) (1994).

[37] See *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982).

[38] Ga. L. 1994, pp. 1895, 1896-1897, § 1.

[39] See *Allison v. State*, 256 Ga. 851, 853-854 (8) (353 SE2d 805) (1987); *Cunningham v. State*, 137 Ga. App. 758 (1) (225 SE2d 98) (1976).

[40] (Citations and punctuation omitted.) *Thomas v. State*, 222 Ga. App. 120 (1) (473 SE2d 251) (1996); see *Gibbons*, supra, 248 Ga. at 865.