## A01A1053. UNDERWOOD v. THE STATE.
(552 SE2d 915)

BARNES, Judge.

A jury convicted James R. Underwood of raping his wife, as well as aggravated assault and false imprisonment. The trial court sentenced him to the mandatory minimum of ten years to serve concurrently on each count. He appeals, arguing that his wife recanted her initial story and the trial court erred in admitting hearsay evidence of his wife's statements regarding the crimes. He also asserts that his trial counsel was ineffective for failing to advise him that the statements could be admitted under the res gestae exception to the hearsay exclusion rule, causing him to decline the State's offer of a plea to a lesser charge and recommendation of a probated sentence. We affirm the trial court's admission of the hearsay testimony and conclude that Underwood waived his claim of ineffective assistance of counsel.

1. Underwood asserts the trial court erred in admitting hearsay evidence concerning the victim's statements made to others. OCGA § 24-3-3 provides that "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." In this case, the Underwoods' next-door neighbor testified that early on March 15, 1999, she saw the victim outside her window, carrying her youngest child. The victim looked "scared" and

"startled" and indicated by gesture she wanted to use the phone, but the neighbor shook her head that she did not have one. The neighbor then opened the door and asked the victim if she was "okay" and offered to take the child. The victim handed over the baby and said no, she was not "okay," and her husband was on crank and trying to kill her. She then walked off, leaving her daughter with the neighbor.

A clerk from a convenience store next to the apartments where Underwood and the victim lived testified that the victim came into the store early one morning in mid-March, wanting to use the phone to call the police. She was shaking, nervous, and crying and said her husband was trying to kill her with a pair of scissors, had cut her hair, and kept her hostage overnight until he fell asleep and she escaped.

A sheriff's deputy testified that he went to the store in response to a call regarding a domestic situation, where he spoke with the victim. It was 7:00 a.m. and cold outside, but the victim was barefoot. She had been crying and appeared upset, drained, and mentally and physically worn out. She told the deputy sheriff that her husband had raped her, would not let her leave the apartment all night, threatened to kill her, forced her to have sex with him, cut her hair, and held a pair of scissors to her throat. She cried intermittently while telling her story and said the abuse had begun around 1:00 or 2:00 that morning. She waited until Underwood was definitely asleep, which was not long before she got her child, went to her neighbor's house to try to get help, and called the sheriff's office.

The deputy sheriff testified that he asked the store clerk to hide the victim in the back of the store while he and his partner watched the front and rear of the apartment house and waited until the investigating detective arrived. While they were watching, Underwood came out and went to his car as if to leave, but the officers detained him. Once the detective arrived, the deputy sheriff took Underwood to the sheriff's office while the detective interviewed the victim and investigated the scene.

The detective testified that he interviewed the victim at her apartment and collected evidence for more than an hour. He was cordial and took his time with the victim, who appeared to understand the substance of their conversation. With the victim's assistance, the detective collected a pair of scissors from the bed, short pieces of hair from the trash can and sofa, took a picture of the victim's bare feet, and took pictures of a bra he retrieved from the trash, showing that it was fastened in the back and cut in the front. These pictures and items were admitted into evidence.

The trial court held a *Jackson-Denno* hearing and concluded that Underwood's subsequent statement was voluntary and therefore admissible. The detective testified that, after concluding his investi-

gation at Underwood's apartment, he interviewed Underwood at the sheriff's office, where he read him his *Miranda* rights and had him review the waiver form. Underwood signed the form and said he was willing to talk, so the two began by discussing the victim's statement. The detective transcribed what Underwood said, then gave him the document to review and correct if necessary. Both subsequently signed the statement. The trial court admitted it into evidence to be read to the jury, and the statement was read as follows, with the bracketed portions being what the detective described as errors in transcription, substituting "my wife" for the victim's name and deleting crossed-out sections:

> I wanted to have sex Saturday night but [my wife] wouldn't. Sunday [my wife] was mad all day up until I went to work. I went to work at 7:00 p.m. and I got off at 11:30 p.m. because I forgot my lunch and went to check to see if [my wife] was home. I stayed and waited for awhile. I went to Ringgold to her sister's and told [my wife] for us to go home. When we got home I told her [my wife] how I felt. I was sick of this stuff. I couldn't let her leave because I love her. I should have let her leave. I did point the scissors at her and told her to shut up. [My wife] said to put the scissors down because she thought I would hurt her. I did take her keys away. I didn't want her to leave. We also had sex last, I told her I was in trouble for rape, but she said I didn't rape her. [My wife] really did [not] want to have sex but she did anyway. When she was sitting on the couch I did cut small pieces of her hair. It was stupid but I did. I was mad. I threw my wedding [band]. I did cut her bra. [My wife] said I do love you. I haven't taken my wedding [band] off. [My wife] was scared out of her wits. I did want sex. I really know she didn't want to wholeheartedly want to have sex. Last night I knew she really didn't want to have sex with me. Your [sic] are going back to her old ways and when I came home it flew all over me when I got home. My wife asked me if I could get off when I was on top of her. We had sex on both couches in the living room and had sex in the bedroom.

After the State presented its case but did not call the victim, she testified on Underwood's behalf that she had lied in the statements she made to the neighbor, store clerk, a detective, and two deputy sheriffs, because she was mad at her husband and wanted to set him up so he would not leave her.

We affirm a trial court's decision to admit res gestae statements

unless that decision is clearly erroneous. *Robinson v. State*, 197 Ga. App. 600, 601 (2) (399 SE2d 94) (1990).

> What is res gestae of a given transaction must depend upon its own peculiarities of character and circumstances. The real test is whether the subject declarations are part of the occurrence to which they relate. Courts must allow some latitude in this matter. The admissibility of the declarations does not depend upon any arbitrary time or general rule for all cases, but is left to the sound discretion of the court in determining from the time, circumstances and statements in question, whether declarations meet the statutory requirements of being free from all suspicion of device or afterthought.

(Citations and punctuation omitted.) *Williams v. State*, 180 Ga. App. 562, 563 (1) (349 SE2d 797) (1986). The evidence here shows that the victim's statements to her neighbor, the store clerk, the deputy sheriffs, and the detective were all consistent and delivered within a few hours of the time she said she escaped captivity. In ruling on Underwood's objection to the testimony, the trial court held that

> [r]unning out half dressed, writing out a statement in her own hand, giving the officer a similar statement and the statement being corroborated by some things that the defendant said, all of that would persuade me that this would be a trustworthy statement, notwithstanding the fact that she may have changed her story now that she and her husband are back together again.

We cannot say the trial court clearly erred in concluding that the statements were free from suspicion of device or afterthought to allow their admission as an exception to the hearsay exclusion. *Park v. State*, 230 Ga. App. 274, 280 (5) (495 SE2d 886) (1998).

2. Underwood asserts that his trial counsel was ineffective for not telling him he could be convicted on res gestae evidence and assuring him the State would lose because his wife, the victim, had recanted. The State and appellant agreed at the sentencing hearing that the State had offered to allow Underwood to plead to a lesser included offense. The trial court indicated that it would have considered a probated sentence in this case, but that because Underwood was convicted of rape, false imprisonment, and aggravated assault, the trial court reluctantly sentenced him to the mandatory minimum of ten years to serve.

However, Underwood's appellate attorney did not file a motion for new trial after the trial court granted an out-of-time appeal, and

thus, his ineffective assistance of counsel claim has never been considered or ruled on by the trial court.

> [T]he grant of an out-of-time appeal constitutes permission to pursue appropriate post-conviction remedies, including a motion for new trial. It follows from that holding and from the requirement that a claim of ineffective assistance of counsel be determined by means of an evidentiary hearing at the earliest practicable moment, that a claim of ineffective assistance of counsel may not be asserted in an out-of-time appeal unless appellate counsel pursues a motion for new trial, subsequent to the grant of the out-of-time appeal, in which the issue is raised and resolved by means of an evidentiary hearing.

*Ponder v. State*, 260 Ga. 840, 841-842 (1) (400 SE2d 922) (1991). Accordingly, Underwood waived his ineffective assistance of counsel argument by failing to raise it at the earliest practicable opportunity. *Ball v. State*, 233 Ga. App. 859 (1) (506 SE2d 149) (1998).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JULY 26, 2001 — 

*Todd M. Johnson*, for appellant.

*Kermit N. McManus, District Attorney, John S. Helton, Assistant District Attorney*, for appellee.