**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 29, 2014**

# In the Court of Appeals of Georgia

A14A1092. BAYO v. THE STATE.

MILLER, Judge.

Following a bench trial, Moustapha Bayo was convicted of one count of aggravated assault (OCGA § 16-5-21 (b) (1)) and one count of kidnapping (OCGA § 16-5-40 (a)).[1] Bayo appeals from the denial of his new trial motion, contending that his trial counsel rendered ineffective assistance. For the reasons that follow, we affirm.

On appeal from a criminal conviction, we view the record in the light most favorable to the verdict.[2] So viewed, the evidence shows that Bayo was the general

---

[1] Prior to trial, the State dismissed one count of armed robbery (OCGA § 16-8-41).

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

manager of an IHOP restaurant owned by Joe Scripture. Scripture owns ten IHOP restaurants in the metro Atlanta area. Bayo was first hired as a server in 2003 and he worked his way up to general manager of Scripture's South Cobb IHOP. In March 2010, Scripture loaned Bayo $1,000 so that Bayo could attend his mother's memorial service.

In early May 2010, Bayo's supervisor noticed that Bayo was not making the required daily cash deposits from the South Cobb IHOP to the bank. Bayo's supervisor confronted Bayo about the missing deposits, and Bayo told him that he used the missing deposits to pay his rent. Bayo's supervisor then went to the South Cobb IHOP and discovered that all of the money from the previous shift was missing from the safe. Surveillance footage showed Bayo taking the money out of the safe and placing it in his pocket. Bayo's supervisor reported the theft to Scripture and the Cobb County police and Bayo was terminated.

A few days later, on May 13, 2010, Scripture was at his office in Forsyth County around 9:00 a.m. Bayo came into Scripture's office and said, "This is no joke. You're dead mother fucker. I'm here to kill you." Bayo was upset that had been fired from his job. Bayo was holding a brown bag and his hand was inside the bag. There appeared to be something inside the bag and Scripture believed it was a gun. Bayo

2

was agitated and yelling and he ordered Scripture to lay down on the floor, which Scripture did. Bayo, who was still holding the bag, then ordered Scripture to stand up and said, "We're going to walk down the hallway, if you try anything funny, if you make a move you're a dead man."

On Bayo's orders, Scripture walked down the hallway and out of his office building into the parking lot. Bayo ordered Scripture into Scripture's truck and told Scripture to drive. Scripture got into the driver seat and Bayo got into the backseat. Bayo then ordered Scripture to call his wife and have her bring Bayo $250,000 within one hour or Scripture would be a dead man. Scripture drove out of the parking lot and, at Bayo's direction, began driving North on Highway 9.

Bayo told Scripture that he wanted his job back. Scripture, fearing for his life, told Bayo that he did not need to worry about the stolen money and was not in trouble, that Scripture would not call the police, and that they could talk the next day about Bayo getting his job back. Bayo then told Scripture to pull over to the side of the road and roll down the rear passenger window. Scripture pulled over to the side of Highway 9, past Fowler Park, and rolled down the window, and Bayo threw the brown bag out of the window. Scripture then rolled up the window and continued to

drive. Bayo told Scripture that he had no food for his family and Scripture gave Bayo approximately $250.

Scripture asked Bayo to come into the front seat of the truck, so they could talk. Bayo crawled into the front seat and Scripture saw that Bayo had a machete. Bayo said that he had come into Scripture's office to kill him and showed him a white nylon rope with which Bayo had planned to tie him up.

Scripture drove back to his office and parked his truck there. Scripture and Bayo exited Scripture's truck and Bayo got into his own vehicle and drove away. Scripture went into his office and locked the door and called the police. Several officers arrived at Scripture's office and Scripture told police what had happened. Scripture told police where the bag had been thrown from his car and, that same day, police recovered a brown bag containing a car jack from alongside Highway 9. The bag was sitting on top of the grass, as though it had not been there long. Police also located Bayo's fingerprints on the rear backseat exterior and interior of Scripture's truck.

The next day, Scripture and police officers waited at Scripture's office for Bayo to arrive to talk to Scripture about getting back his job. When Bayo did not arrive, Scripture called him. On the phone, Bayo apologized to Scripture for the way he had

4

acted. Around 45 minutes later, Bayo arrived at Scripture's office and police arrested him. Police searched Bayo's vehicle and found a white rope. The jack was also missing from Bayo's vehicle.

Prior to trial, Bayo filed a motion to require the State to disclose exculpatory evidence by making Scripture available for examination and photographing of his naked body, including his genital area. Bayo attached to the motion an affidavit in which he averred that he had been involved in a sexual relationship with Scripture and could therefore describe with particularity Scripture's stomach, back, and genital area, including the number and size of certain moles and the color of Scripture's pubic hair. Bayo also averred that he had previously engaged in sex with Scripture in exchange for money. The trial court denied Bayo's motion on the basis that the evidence sought was not relevant, but indicated that it would reconsider the motion if the evidence became relevant.

At trial, Bayo testified that in April 2010, he asked Scripture for a loan after his mother died and Scripture offered Bayo $1,000 to have sex. Bayo agreed, Scripture rented a hotel room, and there they engaged in oral and anal sex. Bayo testified that he went to Scripture's office on May 13, 2010 to explain the missing deposit money. According to Bayo, Scripture offered him a position at another IHOP, pulled down

Bayo's pants and began performing oral sex on him. Scripture asked Bayo to go to a hotel and they both got into Scripture's truck. Bayo testified that he then told Scripture that he would not have sex with him in order to get his job back and Scripture got mad and threatened Bayo. Scripture denied that he and Bayo had sex or otherwise had a personal relationship.

In his sole enumeration of error, Bayo contends that his trial counsel rendered ineffective assistance by failing to renew his motion to force Scripture to disrobe and be examined naked. We disagree.

> In order to prevail on a claim of ineffective assistance, [Bayo] must show that counsel's performance was deficient and that the deficient performance so prejudiced [Bayo] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [Bayo] must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo.

(Citations and punctuation omitted.) *Hampton v. State*, 279 Ga. 625, 626-627 (619 SE2d 616) (2005).

6

No statutory authority nor case law mandates the involuntary examination of a victim. See *Park v. State*, 230 Ga. App. 274, 275 (1) (495 SE2d 886) (1998) (defendant cannot force victim to undergo medical exam); see also *State v. Haynie*, 240 Ga. 866, 867-868 (242 SE2d 713) (1978) (defendant cannot force victim to have bullet surgically removed from his body); *J. B. v. State*, 171 Ga. App. 373, 376 (4) (319 SE2d 465) (1984) (defendant cannot force victim to undergo psychiatric exam). Furthermore, "[t]he Fourth Amendment right of the victim to be secure against an unreasonable search must prevail over the right of the accused to obtain evidence for his defense. Just as victims may decline to be interviewed by defense counsel, they may also decline to be examined[.]" (Footnote omitted.) *Park*, supra, 230 Ga. App. at 275 (1).

Here, Bayo was not entitled to force Scripture, a crime victim, to disrobe for examination and trial counsel cannot be considered deficient in failing to renew a futile motion. "It is axiomatic that the failure to pursue a futile motion does not constitute ineffective assistance." (Citation and punctuation omitted.) *Littlejohn v. State*, 320 Ga. App. 197, 208 (5) (a) (iii) (739 SE2d 682) (2013). Nonetheless, we note that trial counsel adequately protected Bayo's rights by subjecting Scripture to a lengthy cross-examination. . See *Park*, supra, 230 Ga. App. at 275 (1).

7

Moreover, at the hearing on Bayo's motion for new trial, trial counsel testified that he did not think that renewing the motion would be helpful to Bayo's case, because, despite following every lead, trial counsel had not been able to find any other evidence to verify Bayo's alleged relationship with Scripture and trial counsel was not confident that Bayo could give an accurate description of Scripture's body. It is clear based on trial counsel's testimony that not renewing the motion was part of counsel's trial strategy. "This Court has repeatedly held that trial strategy and tactics do not equate with ineffective assistance of counsel." (Citation and punctuation omitted.) *Walker v. State*, 322 Ga. App. 180, 183 (2) (744 SE2d 366) (2013).

Finally, in light of the overwhelming evidence of Bayo's guilt, as set forth above, there is no reasonable probability that the outcome of the trial would have been different but for trial counsel's alleged error. Accordingly, we affirm Bayo's conviction.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur.*