297 Ga. 345
FINAL COPY

S15A0504. POWERS v. THE STATE.

NAHMIAS, Justice.

Appellant Fabian Powers was convicted of felony murder and possession of a firearm during the commission of a felony in connection with the shooting death of Alfred Boyd. Appellant contends that the trial court erred in denying his request for a jury instruction on justification based on self-defense or defense of others. But the court did not err, so we affirm.[1]

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On December 2, 2008, Appellant was at an apartment in College Park smoking crack cocaine with four other people when Boyd arrived with Shekita Gibbs. Boyd stayed a short time and then left

---

[1] The shooting occurred on December 4, 2008. On March 19, 2010, a Fulton County grand jury indicted Appellant for malice murder, felony murder based on aggravated assault, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a first offender probationer. The last charge was severed for trial and later nolle prossed. Appellant's trial began on March 26, 2012, and on April 4, the jury found him not guilty of malice murder but guilty of the remaining charges. The aggravated assault count merged into the felony murder conviction, and Appellant was sentenced to life in prison for felony murder and five consecutive years for the firearm possession conviction. On April 26, 2012, Appellant filed a motion for new trial, which he amended with new counsel on May 1, 2013. After a hearing, the trial court denied the motion on May 5, 2014. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the January 2015 term and submitted for decision on the briefs.

with Gibbs. After dropping her off at another house, Boyd returned to the apartment and robbed everyone there at gunpoint, including taking $3,000 from Appellant. Boyd then fled in a car while people chased after him, shooting at him.

After the robbery, Gibbs called Appellant to tell him she had nothing to do with it, and Appellant threatened to kill her if she did not tell him where Boyd was. Two days later, Gibbs called Appellant and told him that Boyd was at her house. Less than 30 minutes after that, Boyd was shot with an AK-47 rifle while sitting in the driver's seat of his car outside Gibbs's house. He died from gunshot wounds to his chest, right arm, and right shoulder. A pistol was found inside the car underneath where Boyd had been sitting. There was no indication that the pistol had been fired, and all of the bullets found at the scene came from the same AK-47.

No witnesses saw the shooting itself, but a witness testified that he saw one person — and only one person — running away from the victim's car with a gun right after the shooting. Another witness testified that she was sitting in the front passenger seat of Boyd's car waiting for him to return from Gibbs's house, and she heard the shots begin as soon as Boyd got into the car and shut

2

the door, although she did not see the shooter because she ducked down.

The police investigation eventually led Detective David Quinn to interview Appellant about a year after the shooting. At trial, Detective Quinn testified that during the interview, Appellant admitted that he was present during the shooting, but he claimed that his friend Eric Gates, who had also been a victim of the robbery by Boyd, went with him to serve as protection while Appellant confronted Boyd to get his money back. Detective Quinn testified that, according to Appellant, Gates "was holding the AK-47 on the [car]" when Appellant tapped on Boyd's car window, and Gates was the one who shot Boyd. The detective added that Appellant "never said Mr. Boyd produced any kind of weapon." Gates had been killed in an unrelated incident a few months after the shooting and before the interview. The defense theory at trial was that Gates was the shooter and Appellant was merely a scapegoat who had been led into an ambush by Gibbs. Appellant did not testify.

Appellant does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above

3

was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2.    Appellant's only argument is that the trial court erred in denying his request for a jury instruction on the defense of justification. Appellant contends that he was entitled to such an instruction because, he asserts, evidence was presented at trial that Gates shot Boyd in self-defense or in defense of Appellant. See Brunson v. State, 293 Ga. 226, 227 (744 SE2d 695) (2013) ("To authorize a jury instruction there need only be slight evidence supporting the theory of the charge at trial.").[2] The court declined to give a justification charge, however,

---

[2] The trial court had granted the State's request for a jury instruction on parties to crime, see OCGA § 16-2-20, and the prosecutor argued in closing that even if the jury believed Appellant's story that Gates was the shooter, it should find Appellant guilty as a party to the crimes. Under that theory of liability, Appellant would not be guilty if Gates acted with justification – in lawful self-defense or defense of Appellant – when he shot Boyd, because Gates would not have committed a crime. See OCGA §§ 16-2-21 (stating that a party to crime may be convicted "upon proof that the crime was committed and that he was a party thereto"); 16-3-21 (establishing the requirements for legal justification based on defense of self or others); Demery v. State, 287 Ga. 805, 809 (700 SE2d 373) (2010) (explaining that if a person "'is justified  in killing under OCGA § 16-3-21, he is guilty of no crime at all.'" (citation omitted)). See generally State v. Montanez, 894 A2d 928, 937-945 (Conn. 2006) (discussing the relationship between accessorial liability and a justification defense

4

ruling that there was no evidence to support it. The trial court was right.

The evidence of justification on which Appellant relies consists solely of statements he allegedly made during the second part of his interview with Detective Quinn. The first part of Appellant's interview took place in an interview room at the police station and was video-recorded. Although the video recording was admitted into evidence at trial and played for the jury, it was not transcribed by the court reporter and the video itself is not in the record on appeal. However, Detective Quinn testified that Appellant never mentioned Gates during the videotaped portion of the interview, and Appellant does not dispute that account.

The interview then continued in a hallway outside the room, where Detective Quinn surreptitiously made an audio recording using a device in his pocket. The resulting recording was apparently of very poor quality. Like the video, the audio recording itself is not in the appellate record, but a transcript the State made from the recording, which is rife with notations of inaudible or indistinct passages, indicates that Appellant made some statements regarding Gates's alleged role in the shooting. According to the transcript, Appellant said

available to the principal).

5

that when he and Gates approached the car, Boyd was "kinda acting like he wanted to shoot" and fumbled for something in the car's back seat. Appellant also said that he saw that Boyd had a gun. When Detective Quinn asked Appellant directly if Boyd had pulled a gun on Gates, Appellant said, "S***, as far as I know," but the rest of his response was apparently inaudible on the recording.

The problem for Appellant is that the record does not show that those statements, which the transcript indicates were made near the end of the audio recording, were ever actually presented as evidence during the trial. At trial, the State had the audio recording admitted into evidence and began to play it for the jury, but the audio quality was so poor that the court stopped the playback at an unknown point. Because of the poor audio quality, copies of the transcript of the recording were initially handed out to the jurors to follow along as the recording played, but the jurors were repeatedly admonished not to read ahead, and the copies were collected when the playback was stopped. Moreover, while the transcript was marked as an exhibit and is in the appellate record, it was neither admitted into evidence nor sent back with the jury during deliberations.

After the audio playback was stopped, both parties agreed that the

6

contents of the audio-recorded portion of Appellant's interview would instead be brought out through the testimony of Detective Quinn. During deliberations, the jury sent the court a note asking if the audio recording was admitted into evidence. Without objection, the court answered, "The audiotape was admitted into evidence, however, it was of such poor quality, it could not be played. The contents of the audiotape were presented to you through the direct and cross-examination testimony of Detective Quinn."

In determining whether evidence supporting a justification instruction was presented at trial, we can consider only the evidence that the record shows was actually presented to the jury. See Brunson, 293 Ga. at 227-228. And the only evidence of Appellant's story that Gates shot Boyd that the record demonstrates was presented to the jury was in Detective Quinn's testimony. With regard to the hallway portion of Appellant's interview, Detective Quinn testified that Appellant said that Gates had an AK-47 held on the victim's car when Appellant approached it to confront Boyd about the stolen money, and that Gates then shot Boyd; while these statements by Appellant are not reflected in the transcript of the audio recording, they could have occurred during one of the many portions of the interview that the transcript indicates were inaudible, and Appellant did

7

not dispute that he made these statements on cross-examination or otherwise. The detective did not testify, even on cross-examination, that Appellant ever indicated that Boyd had pulled a gun or that Gates acted in self-defense, and there was no other evidence presented to the jury that Gates or Appellant acted in self-defense or in defense of others. Accordingly, the trial court did not err in declining to give a justification instruction.

Moreover, even if we were to speculate that, before the audio playback was stopped, the jury heard what the transcript (which was not evidence) indicates were Appellant's poorly recorded and equivocal statements suggesting that Boyd intended to shoot at Gates and Appellant after they approached his car, when that is coupled with Detective Quinn's undisputed testimony that Appellant also said that Gates had an AK-47 trained on the car at the time Appellant approached and knocked on the window, then Gates was the original aggressor even in Appellant's version of events. And a defendant is not entitled to a jury instruction on justification when the evidence is that the supposedly justified party was the aggressor. See OCGA § 16-3-21 (b) (3) ("A person is not justified in using force . . . if he . . . [w]as the aggressor . . . unless he withdraws from the encounter and effectively communicates to such other person his intent

8

to do so and the other, notwithstanding, continues or threatens to continue the use of unlawful force."); <u>Brunson</u> 293 Ga. at 227-228 (holding that the defendant was not entitled to a self-defense charge where the record showed that the victim initiated a fight only after the defendant had threatened him with a revolver); <u>Park v. State</u>, 230 Ga. App. 274, 278 (495 SE2d 886) (1998).

Judgment affirmed. All the Justices concur.

Decided June 15, 2015.

Murder. Fulton Superior Court. Before Judge Adams.

Jimmonique R. S. Rodgers, Long D. Vo, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Sheila E. Gallow, Peggy R. Katz, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.